594 P.2d 1034

**CHURCH OF SCIENTOLOGY of Arizona, an Arizona Corporation, Appellant,**

v.

**CITY OF PHOENIX POLICE DEPARTMENT, a municipal agency, Lawrence M. Wetzel, Chief of Police, John Does I–X, Appellees.**

No. 1 CA–CIV 3825.

Court of Appeals of Arizona, Division 1, Department B.

April 26, 1979.

Jules I. Firetag, Phoenix, for appellant.

Venable, Rice, Lee & Capra by Gilbert T. Venable, Phoenix, for appellant.

Jones, Teilborg, Sanders, Haga & Parks, P. C. by Linda A. Drake, Phoenix, for appellees.

OPINION

SCHROEDER, Presiding Judge.

This is an action brought by the appellant, Church of Scientology of Arizona, for the disclosure of certain documents in the possession of the appellee, City of Phoenix Police Department. The appellant sought disclosure of the documents pursuant to Arizona's document inspection statutes, A.R.S. § 39–121 et seq. This is an appeal from the trial court's judgment denying disclosure.

Appellant is a nonprofit organization which, along with affiliated corporations throughout the country, was at one time subjected to considerable scrutiny and investigation by various law enforcement agencies apparently leading to unfavorable publicity. In an effort to quell some of the controversy, and to present its side of the story, appellant sought disclosure of records in the possession of the Phoenix Police Department relating to appellant, its affili-

ates, and certain designated leading members. The appellee police department did furnish some material, but declined to disclose a group of approximately twenty-two pieces of paper which it designated as "inter or intra-agency communications." Appellant then filed this special action in the trial court seeking to compel disclosure.

It is undisputed that the documents are all over twenty years old. There is no ongoing investigation to which they pertain, nor is any further investigation contemplated. Appellee has never suggested that the documents reveal any confidential information sources or information gathering techniques, or that disclosure to appellant would involve any invasion of privacy. Indeed appellee has never specifically articulated any potential harm likely to result from disclosure of the documents. Rather, it has adhered to the premise that investigative files, and particularly inter and intra-agency communications, originally intended to be confidential should, as a matter of policy, ever remain so.

The appellant brought this action pursuant to statutory provisions regarding inspection of public agency records. A.R.S. § 39–121 et seq. The original Arizona statute, A.R.S. § 39–121, adopted from a similar California statute, provides simply that

> Public records and other matters in the office of any officer at all times during office hours shall be open to inspection by any person.

After an in-camera inspection the trial court ruled in favor of the appellee police department finding that the documents subject to disclosure were not "public records."

There has been very little Arizona judicial interpretation of A.R.S. § 39–121. The leading case is *Mathews v. Pyle*, 75 Ariz. 76, 251 P.2d 893 (1952), in which a newspaper sought access to an investigative report submitted to the Governor on the activities of the Attorney General's Office. The Court there held that the report was not a "public record" which it defined as " 'one made by a public officer in pursuance of a duty, the immediate purpose of which is to

disseminate information to the public, or to serve as a memorial of official transactions for public reference.' " 75 Ariz. at 78, 251 P.2d at 895. The Court held, however, that the report might be subject to inspection as an "other matter." In determining whether records other than "public records" should be available for inspection, the Court held that disclosure is appropriate unless the documents are "confidential or of such a nature that it would be against the best interests of the state to permit a disclosure of their contents." 75 Ariz. at 80, 251 P.2d at 896. The Court ordered an in-camera inspection by the trial court to determine whether disclosure of the particular document in question was appropriate.

■■■ In 1975, the legislature added A.R.S. § 39–121.01. That provision, which now incorporates subsequent amendments not material to the questions before us, defines a responsibility of all officers of public bodies to

> maintain all records reasonably necessary or appropriate to maintain an accurate knowledge of their official activities and of any of their activities which are supported by funds from the state or any political subdivision thereof. A.R.S. § 39–121.01(B).

It further provides in subsection (D), that the custodian of such records shall furnish copies on request. We agree with a 1976 opinion of the Attorney General that, following passage of the 1975 provisions,

> the proper way to view all requests for information is not to determine whether or not a record is technically a public record or other matter, but instead to determine if release of the information would have an important and harmful effect upon the official duties of the official or agency. 76–43 Ariz.Op.Att'y Gen. (1976).

The appellee's principal underlying contention is that, even though no specific harm will be done by the disclosure of these particular documents, the efficient functioning of law enforcement agencies will be undermined by any disclosure of investigatory materials, no matter how stale. In

support of this contention, the appellee relies upon a series of California cases, holding that various investigatory materials are not subject to disclosure. *See Runyon v. Board of Prison Terms and Paroles*, 26 Cal. App.2d 183, 79 P.2d 101 (1938) (letters to parole board); *People v. Wilkins*, 135 Cal. App.2d 371, 287 P.2d 555 (1955) (current police records); *People v. Pearson*, 111 Cal. App.2d 9, 244 P.2d 35 (1952) (sheriff records described as "public records but confidential"); *City Counsel of City of Santa Monica v. Superior Court*, 204 Cal.App.2d 68, 21 Cal.Rptr. 896 (1962) (private investigator's report concerning dismissal of police chief denied to newspaper). All of those cases, however, apparently involved materials of a highly contemporary nature. Disclosure would have resulted in impairment of investigation or invasion of privacy. We find nothing in those cases to indicate that investigative materials should forever remain confidential simply as a result of its original characterization as such. In fact, one California decision cited by appellee dealing with grand jury transcripts, holds that material which at one time is properly secret should not permanently be withheld from public inspection. *Craemer v. Superior Court*, 71 Cal.Rptr. 193, 265 Cal.App.2d 216 (1968).

There is no specific Arizona statutory exemption from inspection for investigative materials. We note that the Federal Freedom of Information Act exempts investigatory records from inspection only to the extent that production would:

(A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel; . . . 5 U.S.C. § 552(b)(7).

Under these federal standards the appellant would be permitted to inspect these materials. The appellee has not suggested that the federal policy is unsound, and in fact has referred us to another provision of the Federal Act exempting "inter or intra-agency communications" from disclosure. We agree that the Federal Act offers guidance, but the provision to which appellee refers does not support the position which it urges. Far from exempting all inter and intra-agency communications per se, the Federal Act provides that they shall be subject to disclosure to the extent that they would be subject to discovery by a party in litigation with the agency. 5 U.S.C. § 552(b)(5). *See Environmental Protection Agency v. Mink*, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). In oral argument, appellee conceded that the materials involved here would be discoverable under such a standard.

In sum, we are mindful of the importance of protecting truly confidential investigatory materials but find no justification for refusing to disclose these documents. We are not persuaded that our statutory policy in favor of disclosure should be so easily, and permanently, thwarted by the unilateral and potentially self-serving inclination of government officials to classify files as confidential. Whether the materials retain, or ever had, any significance or value to the appellant is a decision properly left to the appellant.

The judgment of the trial court is reversed, and the matter is remanded to the trial court with instructions to make copies of the documents in question available to appellant.

HAIRE, J., concurs.

OGG, Judge, dissenting:

I respectfully dissent. I do not believe the legislature intended to include police interoffice and intra-agency communications as public records. *See Mathews v. Pyle, supra*. I do believe such communica-

tions qualify as "other matters" under A.R.S. § 39–121, and they may be inspected by the public unless they are (1) confidential, or (2) of such a nature that it would be against the best interest of the state to permit disclosure of their content.

In order for the documents requested in this case to be considered confidential, the police department's need for secrecy must outweigh the Church's interest in disclosure. Such a balancing test was established in the case of *Mathews v. Pyle*, where the Arizona Supreme Court stated a governmental agency has the authority to deny the inspection of such material if it thinks such disclosure would be detrimental to the best interest of the state. If such decision is challenged, the issue must be determined by the courts. The trial judge must hold an "in camera" inspection of the disputed documents and in the exercise of sound discretion determine if the inspection would be detrimental to the best interests of the state.

In this case, the trial judge followed the *Mathews v. Pyle* guidelines and held an "in camera" inspection of the interoffice and intra-agency police communications relative to the criminal investigation made involving the Church. At the conclusion of this inspection, the court entered an order finding they were not public records and therefore denying inspection of these communications by the Church.

Viewing the evidence in a light most favorable to upholding the judgment of the trier of fact, I find no abuse of discretion by the trial court. The Church wanted these records so they could straighten out the thinking of those who sent or received these communications during the investigation. The documents were not and are not needed for any litigation between the parties. Such inspection has been held to be proper where litigation is involved, but even there the trial court has the authority to withhold confidential materials, such as the names and addresses of witnesses or complainants. *City of Tucson v. Superior Court*, 25 Ariz. App. 512, 544 P.2d 1113 (1976); *City of Phoenix v. Peterson*, 11 Ariz.App. 136, 462 P.2d 829 (1969). Mere fishing expeditions are not permitted. *State ex rel. DeConcini v. Superior Court*, 20 Ariz.App. 33, 509 P.2d 1070 (1973). From my personal inspection of the contested documents, it appears that while some are innocuous, others are investigation memoranda of officers and opinions of potential witnesses as well as lists of names, addresses and phone numbers. In my opinion, there is a strong state interest in protecting the free flow of information, both interoffice and intra-agency, among police agencies. If a private citizen knows his name, address and testimony may be divulged, no matter how remote in time, to the party under investigation by the police, this will have a chilling effect upon the participation by the public in police investigations.

I find the interest of the Church in the disputed documents to be minimal. Much of the information requested has been disclosed. Using the balancing test of *Mathews v. Pyle*, I cannot say the trial judge abused his discretion in refusing to order the disclosure of these police interoffice and intra-agency communications.

I would affirm the judgment.