636 P.2d 663

Carl P. LITTLE, Petitioner/Appellee,

v.

William J. GILKINSON, Chief of Police of the City of Tucson; Sergeant Ronald Penning; and Detective Steven Bunting,

and

The City of Tucson, Real Party in Interest, Respondents/Appellants.

No. 2 CA–CIV 3919.

Court of Appeals of Arizona, Division 2.

Oct. 19, 1981.

Charles L. Weninger, Tucson, for petitioner/appellee.

Frederick S. Dean, City Atty. by Michael G. Wood, Tucson, for respondents/appellants.

## OPINION

HATHAWAY, Chief Judge.

This is an appeal from a special action in the superior court, in which appellants were ordered to disclose a police file on the murder of appellee's son and to return personal items that belonged to the victim.

Robert "Shorty" Little, a reputed motorcycle-gang leader, was gunned down in 1977. When the police failed to make headway on the case, Little's father, the appellee herein, offered a reward for information leading to the conviction of his son's killer. The reward offer brought no new leads. In desperation, Little's father decided to hire a private investigator to solve the murder and therefore asked that the police reports be made available to him. He also asked

for the return of his son's personal effects,[1] which were still held by the police.

At the hearing, testimony was elicited to show that disclosure of the file outside the police department would hinder the investigation and eventual prosecution of the case and that return of the personal effects would create chain-of-custody problems in a future trial. Appellee sought to show that the official investigation was at a dead end and that the personal effects could have no foreseeable evidentiary significance.

The issues in this appeal are governed by A.R.S. § 39–121, which states:

"Public records and other matters in the office of any officer at all times during office hours shall be open to inspection by any person."

Although many states exempt police investigatory reports from their public-records access statutes, Arizona does not. See generally, Annot., 82 A.L.R.3d 19.

Appellant, however, argues that the police files on the Little murder do not come within the "public records and other matters" of § 39–121. That question was decided in *Church of Scientology v. City of Phoenix Police Dept.*, 122 Ariz. 338, 594 P.2d 1034 (App.1979), which held that a 20-year old police report must be disclosed. Appellant contends that *Church of Scientology* cannot control this case because it was wrongly decided in light of the Arizona Supreme Court case, *Mathews v. Pyle*, 75 Ariz. 76, 251 P.2d 893 (1952). We disagree.

In *Mathews*, a newspaper publisher sought disclosure of a report prepared by the attorney general for the governor about an investigation of the State Land Commission. The governor claimed an absolute right to withhold the report; the trial court denied access. The supreme court engaged in a two-step analysis. First, it questioned whether the report was a "public record or other matter" covered by the statute and held that it was an "other matter." Second, the court called for a factual finding by the trial court on remand whether the report was confidential and whether its release would be harmful to the best interests of the state.

*Church of Scientology*, quoting an opinion of the attorney general, dispensed with the initial determination of whether a document is a "public record or other matter" and adopted a one-step test: whether the release of the record would have "an important and harmful effect upon the official duties of the official or agency." 122 Ariz. at 339, 594 P.2d 1034.

We agree with the interpretation of *Mathews* and A.R.S. § 39–121 rendered in *Church of Scientology*. That opinion recognized the effect of a new statute, A.R.S. § 39–121.01, which requires all public officers to maintain records of official activities or any activities supported by state funds. Since *Mathews* defined public record as one made by a public official in pursuance of a

---

1. The personal effects consisted of:

| | | | |
|---|---|---|---|
| 1. | Address book | 17. | Four (4) P.P. 30–06 shells |
| 2. | Buck knife and leather pouch | 18. | Two (2) 7mm shells |
| 3. | Wallet with I.D. and cards | 19. | Box of Western 7mm shells with |
| 4. | Three (3) brown holsters | | 17 empties |
| 5. | Miscellaneous papers | 20. | Briefcase with miscellaneous |
| 6. | Brass roach clip | | photos, papers and homemade pipe |
| 7. | Black roach holder | | |
| 8. | M.A.F.I.A. button | | |
| 9. | Silver star | | |
| 10. | Silver wings | | |
| 11. | Two (2) pairs sunglasses | | |
| 12. | Can of mace | | |
| 13. | Box of unknown number of Winchester 9mm rounds | | |
| 14. | Box with Western .38 caliber cartridges | | |
| 15. | W–W 12 Ga. shotgun shells | | |
| 16. | R.P. .38 spec. shell | | |

duty,[2] the police records in *Church of Scientology* were public records. The language of § 39–121.01 renders it more fruitful to proceed directly to the determination of whether the information should nevertheless be withheld, in compliance with *Mathews'* concerns with confidentiality and harm to the state. The determination of these issues lies within the "sound discretion" of the trial court. *Mathews v. Pyle*, supra. In the instant case, the commissioner made an *in camera* inspection of the file, which has not been made a part of the record on appeal. The failure to include these documents makes it impossible to determine whether the trial court abused its discretion. The burden of providing a sufficient record is on the party charging error. We will not reverse the trial court without an opportunity to review the evidence upon which its decision was based. See *Chemi-Cote Perlite Corp. v. Harborlite Corp.*, 4 Ariz.App. 268, 419 P.2d 398 (1966); 4 Am. Jur.2d, Appeal and Error, § 398.

 Appellant argues that the police reports are inherently confidential, so that the trial court could not reasonably have ordered disclosure. However, as the court in *Church of Scientology* stated, "[w]e are not persuaded that our statutory policy in favor of disclosure should be so easily, and permanently, thwarted by the unilateral and potentially self-serving inclination of government officials to classify files as confidential." 122 Ariz. at 340, 594 P.2d 1034. The confidentiality of police files is adequately protected by the kind of *in camera* inspection made by the trial court in this case.

The return of Shorty Little's personal effects to his father was opposed by appellant because of the possibility that they would turn out to be of evidentiary value. Their value as evidence, however, will not become apparent until the police find a suspect in the murder. Since there is no statute of limitations on capital crimes, the Little investigation may never be closed and the property could remain with the police indefinitely.

■ We believe the police must be allowed to keep these items to avoid their loss or any chain-of-custody problems at a future trial. There simply is no way to tell now whether one or more of the items will be necessary. Appellee should, however, be permitted to inspect and photograph the items for his own use.

The order is modified to show that the personal effects remain in the possession of the Tucson Police Department subject to inspection and photographing by appellee and the order as modified is affirmed.

HOWARD and BIRDSALL, JJ., concur.

---

2. *Mathews* defined public records as:

"one made by a public officer in pursuance of a duty, the immediate purpose of which is to disseminate information to the public, or to serve as a memorial of official transactions for public reference," as one "which is required by law to be kept, or necessary to be kept in the discharge of a duty imposed by law or directed by law to serve as a memorial and evidence of something written, said or done," and as "a written record of transactions of a public officer in his office, which is a convenient and appropriate method of discharging his duties, and is kept by him as such, whether required by express provisions of law or not."