687 P.2d 1272

Lawrence W. CARLSON,
Plaintiff/Appellant,

v.

PIMA COUNTY, a body politic, and
Clarence Dupnik, Sheriff,
Defendants/Appellees.

No. 2 CA–CIV 4680.

Court of Appeals of Arizona,
Division Two.

June 27, 1983.

Rehearing Denied Sept. 30, 1983.

Review Granted Nov. 15, 1983.

J. Michael Tully, Tucson, for plaintiff/appellant.

Stephen D. Neely, Pima County Atty. by Steven L. Bossé and David L. Berkman, Tucson, for defendants/appellees.

OPINION

BIRDSALL, Judge.

This appeal arises out of a defamation trial against the Pima County Sheriff, Clarence W. Dupnik. Other defendants were named in the complaint filed by the trial court plaintiff, Lawrence W. Carlson. The trial court directed a verdict in favor of all the other defendants at the close of the plaintiff's evidence and the appellant, the plaintiff Carlson, agrees that ruling was correct. The trial court also directed a verdict against the appellant and in favor of the appellee, Dupnik, at the close of all the evidence. The appellant contends that ruling was error. We do not agree, and we affirm the judgment of the trial court.

The facts necessary to understand the trial court's ruling and our affirmance follow.

On March 19, 1981, the appellant was an inmate at the Pima County Jail awaiting trial. On that date another inmate reported a sexual assault upon him by Carlson and two other inmates. This report was reduced to a written "offense report" in which the names of all three suspects named by the victim and the details of the incident appeared. A reporter for UPI obtained the information in the report, and a story was released which in its worst light told the public that the appellant had been accused of forcible oral sex upon a fellow jail inmate.

The trial court correctly found that the offense report was a public record which was required to be kept and further required to be made available to the public on request, citing A.R.S. § 39–121 and § 39–121.01. The first statute provides:

"Public records and other matters in the office of any officer at all times during office hours shall be open to inspection by any person."

The "offense report" was a report made by a public official, the Sheriff, by his personnel, in pursuance of a duty and, like the police records involved in *Church of Scientology v. City of Phoenix*, 122 Ariz. 338, 594 P.2d 1034 (App.1979) and *Little v. Gilkinson*, 130 Ariz. 415, 636 P.2d 663 (App. 1981), was a public record. A.R.S. § 39–121.01(A)(1) and (2) define officer as:

"any person elected or appointed to hold any elective or appointive office of any public body and any chief administrative officer, head, director, superintendent or chairman of any public body."

and public body as:

"the state, any county, city, town, school district, political subdivision or tax-supported district in the state, any branch, department, board, bureau, commission, council or committee of the foregoing, and any public organization or agency, supported in whole or in part by funds from the state or any political subdivision thereof, or expending funds provided by the state or any political subdivision thereof."

Subparagraph B further provides:

"All officers and public bodies shall maintain all records reasonably necessary or appropriate to maintain an accurate knowledge of their official activities and of any of their activities which are supported by funds from the state or any political subdivision thereof."

The balance of the statute provides, in part, that copies of such records must be furnished the public subject to an exception not involved here.

The appellee Sheriff is charged with the duty of "keeping the jail". A.R.S. § 31–101. The Sheriff must receive all persons committed to the jail and provide them with necessaries. A.R.S. § 31–121. In order to properly "take charge of and keep the county jail and the prisoners therein", A.R.S. § 11–441(A)(5), it follows that records, including the subject "offense report" must be kept. Additionally, since the Sheriff is a law enforcement officer charged with keeping the peace, A.R.S. § 11–441(A)(1), records such as the offense report must be kept.

For all the foregoing reasons we agree with the trial court and the appellee that this was a public record. We reject the appellant's arguments that the report was not a public record because "it says it isn't" and because it is an "investigative" report. The basis for the argument that

the report "says it isn't" a public record is a stamp that was apparently placed on the report.[1]  The stamp read:

"Dissemination is restricted to Criminal Justice Agencies and authorized Non-C.J. Agencies ONLY.  Secondary dissemination to unauthorized agencies is PROHIBITED by Privacy and Sec. Laws: 20:21."

In addition printed on the front page of the report were the words "Limited Acess" [sic] and the front page was also stamped "Limited Access".

■  We understand the reference to be to the federal code, 5 U.S.C.A., Sec. 552, et seq. (1977), popularly known as the Freedom of Information Act.  These federal laws provide that information shall be made available to the public with certain exceptions, including:

"investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel;" 5 U.S. C.A. Sec. 552(b)(7) (1977).

Thus unless the report contained information described in (A) through (F) above, it was not properly classified as limited access material even if it was an investigative report.  Just because the document was labeled "limited access" does not make it such.  It does not appear to come within

the exemptions of subparagraph (7) unless, as the appellant argues, the release of the information was an unwarranted invasion of his personal privacy.

■  Thus the question presented in this libel action is whether the Sheriff could be liable for releasing the offense report on that theory.  We hold that he could not.

The occasion for the report was privileged as a matter of law.  The Sheriff had the duty to make the report and to release it. . See Roscoe v. Schoolitz, 105 Ariz. 310, 464 P.2d 333 (1970).  And see Patterson v. City of Phoenix, 103 Ariz. 64, 436 P.2d 613 (1968) (officer investigating offense tells employer of suspect's alleged involvement, held conditional privilege).  There are no facts in dispute, and the trial court properly arrived at this conclusion.  The action was within the scope of the Sheriff's duties.

The appellant does not contend that either the preparation or release of the report involved any malice or intentional defamation of the appellant.  No evidence would support any such contention.  If these claims were made, and if they had evidentiary support, then the ruling of the trial court would no doubt have been different.  See Annot. 13 A.L.R.2d 897 (1950); Bradford v. Mahan, 219 Kan. 450, 548 P.2d 1223 (1976); Tocco v. Piersante, 69 Mich.App. 616, 245 N.W.2d 356 (1976); Munn v. Burks, 19 Or.App. 144, 526 P.2d 1040 (1974).  The determination of whether a privilege existed was properly made by the trial court since there was no dispute about the facts of the occasion.  Roscoe v. Schoolitz, supra.  And see S.H. Kress and Company v. Self, 22 Ariz.App. 230, 526 P.2d 754 (1974); Long v. Mertz, 2 Ariz.App. 215, 407 P.2d 404 (1965).

The appellant's reliance on Portonova v. Wilkinson, 128 Ariz. 501, 627 P.2d 232 (1981) is misplaced.  That case, while recognizing that a police officer had a qualified privilege to release information to a

---

1.  We say apparently because the exhibit certified as that which was admitted in evidence in the trial court does not bear any such stamp or other notations.  However, a copy of the report filed as a supplemental exhibit to the appellant's brief does have the various legends.  We assume these words were placed prior to release of the information to the reporter.

news reporter under appropriate circumstances, found the occasion in question did not qualify. The circumstances in *Portonova* were an accusation by a juvenile burglar, also known to be an adept fabricator, that a probation officer had told him not to tell the police about his burglaries. The police officer gave this information to a reporter, including the name of the probation officer over the telephone. There was no public record involved. The opinion speaks only of a departmental report. There is no discussion of the public records statutes.

Affirmed.

HOWARD, C.J., and HATHAWAY, J., concur.