IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

---

MATTHEW ABRAHAM, PHD,
*Plaintiff/Appellant*,

*v.*

ARIZONA BOARD OF REGENTS, A LEGALLY ESTABLISHED AGENCY AND
POLITICAL SUBDIVISION OF THE STATE OF ARIZONA,
*Defendant/Appellee*.

No. 2 CA-CV 2024-0073
Filed January 6, 2025

---

Appeal from the Superior Court in Pima County
No. C20214306
The Honorable Wayne E. Yehling, Judge

**AFFIRMED**

---

COUNSEL

Jaburg & Wilk P.C., Phoenix
By David N. Farren and Thomas S. Moring
*Counsel for Plaintiff/Appellant*

Cohen Dowd Quigley P.C., Phoenix
By Betsy J. Lamm, Jenna L. Brownlee, and Drew G. Wegner
*Counsel for Defendant/Appellee*

---

**OPINION**

---

Presiding Judge Sklar authored the opinion of the Court, in which Vice Chief Judge Eppich and Judge Brearcliffe concurred.

---

S K L A R, Presiding Judge:

¶1     Public records are entitled to a presumption of disclosure. But officers and public bodies may withhold or redact such records based on "countervailing interests of confidentiality, privacy or the best interests of the state." *Carlson v. Pima County*, 141 Ariz. 487, 490-91 (1984). In this appeal, we address the scope of a trial court's review in special actions challenging the denial of a public records request for these reasons.

¶2     The issue arises out of records requests that Matthew Abraham made of the University of Arizona. The university eventually disclosed many of the records, but Abraham filed a special action against the Arizona Board of Regents, seeking records the university continued to withhold or redact. The trial court ruled that Abraham was entitled to no additional records and denied his request for attorney fees.

¶3     On appeal, Abraham argues that the trial court improperly reviewed the university's withholding and redaction decisions for an abuse of discretion. He argues instead that de-novo review was required. Consistent with our supreme court's case law, we conclude that trial courts reviewing these decisions must apply a two-pronged scope of review. First, they must consider de novo whether the officer or public body has invoked a specific, legally sufficient harm that is grounded in confidentiality, privacy, or the best interests of the state. Second, if the officer or public body satisfies that requirement, courts must apply abuse-of-discretion review in evaluating the withholding and redaction decisions for specific documents. Applying that standard, we agree with the trial court that Abraham was not entitled to additional records. We also affirm the trial court's decisions: (1) granting a motion to dismiss concerning records that Abraham alleged had been destroyed before litigation began; (2) granting summary judgment on one count based on the statute of limitations; and (3) denying Abraham's request for attorney fees.

**FACTUAL AND PROCEDURAL BACKGROUND**

**¶4**        We view the facts in the light most favorable to sustaining the judgment. *Desert Palm Surgical Grp., P.L.C. v. Petta*, 236 Ariz. 568, n.1 (App. 2015). Abraham made numerous public-records requests of the university between November 2018 and September 2020. The requests generally concerned meetings of faculty committees, the hiring of certain academic officials, and an outside scholar's speaking engagement. In response, the university disclosed some materials in full and disclosed others with redactions. It also withheld some materials, primarily citing privacy, confidentiality, and the best interests of the state.

**¶5**        In October 2020, Abraham's counsel sent the university a demand letter that reiterated the prior requests. In response, the university provided additional documents and indicated that a recording requested by Abraham no longer existed. It ultimately produced approximately 1,700 pages of documents, as well as redaction logs.

**¶6**        Abraham filed a special action complaint against ABOR in September 2021. The complaint alleged ten counts of violations of the public records laws. Each count corresponded to the university's response to a separate request or set of requests. Abraham sought an order compelling production of the responsive public records. He also sought an award of attorney fees and costs, as well as money damages.

**¶7**        ABOR moved to dismiss some of the claims. It also moved to dismiss Abraham's demand for money damages because Abraham had not filed a notice of claim. The trial court granted the motion in part, dismissing two claims and any claim for money damages other than attorney fees.

**¶8**        The parties filed cross-motions for summary judgment. The trial court granted ABOR's motion in part, concluding that Abraham had filed one count outside the statute of limitations and had presented no evidence that another document existed. It otherwise denied both cross-motions.

**¶9**        In September 2023, the trial court conducted a bench trial on the remaining counts. It subsequently issued a ruling that denied relief to Abraham. It concluded that although the university had "substantially abused its discretion and/or acted arbitrarily" before Abraham's counsel sent the demand letter, it "cured" those actions by providing documents. It also denied Abraham's request for attorney fees, also because the university had cured the violations. Abraham timely appealed.

**NONEXISTENT RECORDS**

**¶10**        Abraham first challenges the trial court's denial of relief concerning documents that do not exist.  He focuses primarily on the dismissal of Count Two, which alleged that the university had improperly destroyed the audio recording of a meeting.  He also references Count Eight, which concerned the search for a director of the university's writing program.  The court granted summary judgment on that count, concluding that Abraham had presented no evidence the document at issue existed.

**¶11**        We review de novo the trial court's grant of a motion to dismiss.  *Abbott v. Banner Health Network*, 239 Ariz. 409, ¶ 7 (2016).  We also assume the truth of all well-pled factual allegations in Abraham's complaint.  *See Coleman v. City of Mesa*, 230 Ariz. 352, ¶ 9 (2012).  We likewise review de novo the grant of summary judgment.  *Glazer v. State*, 237 Ariz. 160, ¶ 29 (2015).

**¶12**        The recording from Count Two concerned an October 2019 meeting of the university's "Committee of Eleven."  Abraham requested the recording later that month, but the university twice withheld it as confidential.  Abraham renewed the request in his October 2020 demand letter.  The university later acknowledged that the recording had been destroyed.  In its motion to dismiss, ABOR argued that it could not be required to produce a record that no longer existed.  The trial court granted the motion as to Count Two.

**¶13**        On appeal, Abraham does not suggest that ABOR could be required to produce a record that no longer exists, even if its destruction had been wrongful.  *Cf. Am. Civ. Liberties Union v. Ariz. Dep't of Child Safety* (*ACLU*), 240 Ariz. 142, ¶¶ 13-24 (App. 2016) (concluding that agency was not required to create new record compiling data about existing records).  He instead argues that the trial court's ruling precluded him from "obtain[ing] the University's sworn testimony admitting the recording existed or, if it did not exist, how and why it was destroyed."

**¶14**        But in granting the motion, the trial court was required to accept as true the complaint's well-pled factual allegations.  *See Coleman*, 230 Ariz. 352, ¶ 9.  These included the allegation that the university had engaged in the "clandestine destruction" of the recording.  Thus, Abraham unambiguously pled that the recording had been destroyed.  He has pointed to no authority allowing him to avoid dismissal simply to obtain confirmation of a fact he alleged.

**¶15**        Abraham argues, though, that the trial court's ruling leaves him without a remedy for the recording's destruction.  In his view, the "ruling encourages the government to destroy a public record rather than produce it."  But as ABOR points out, Abraham could have brought a claim against ABOR under A.R.S. § 39-121.02(C).  That statute allows "[a]ny person who is wrongfully denied access to public records" to bring a claim "against the officer or public body for any damages resulting from the denial."  *Id.*

**¶16**        As the trial court concluded, however, Abraham was ineligible for money damages because he did not file a notice of claim.  *See* A.R.S. § 12-821.01(A); *City of Mesa v. Ryan*, ___ Ariz. ___, ¶ 9, 557 P.3d 316, 319 (2024) (explaining notice-of-claim requirements).  Thus, although Abraham may lack a remedy for the university's destruction of the recording, it is at least in part because of his own litigation choice, not the statutory scheme.  We conclude that the trial court properly granted the motion to dismiss as to Count Two.

**¶17**        The same analysis applies to ABOR's summary-judgment motion on Count Eight, which we also conclude the trial court properly granted.  It also applies to Abraham's more general argument that by not providing documents sooner, the university "fail[ed] to promptly respond" to his requests, as required by A.R.S. § 39-121.01(E).  The only conceivable remedy available for the university's asserted lack of promptness is money damages, which require a notice of claim.

## SUMMARY JUDGMENT ON STATUTE OF LIMITATIONS

**¶18**        Abraham also challenges the trial court's grant of summary judgment to ABOR on Count One.  The court concluded that this count had been filed beyond the one-year statute of limitations imposed by A.R.S. § 12-821 for actions against public entities and employees.  We review de novo the "interpretation of a statute of limitations."  *Mertola, LLC v. Santos*, 244 Ariz. 488, ¶ 8 (2018).

**¶19**        Count One related to Abraham's records request from November 2018.  Abraham sought the "names of all applicants for the ongoing search for the University of Arizona's Vice Provost for Academic Affairs," as well as their application letters.  The university denied that request, citing the need to "protect candidate confidentiality and privacy (until such time as candidate(s) become a finalist and confirm his/her intention to proceed with the selection process)."  It also stated that "application letters are confidential and not subject to release."  It therefore

deemed Abraham's request "responded to and closed in accordance with Arizona public records laws."

¶20　　By March 2019, the vice-provost position had been filled, and Abraham filed another request for the same documents. The university responded by providing documents that Abraham's complaint described as "application letters and CVs for the three finalists," but not the other applicants. The response also contained language deeming the request fulfilled and closed.

¶21　　Abraham took no further action until October 2020, when his counsel discussed the request in the demand letter. However, in that letter, he did not request the documents again. Instead, he acknowledged that the university had "produced the requested documents" in March 2019. Presumably, he was referring to the materials concerning the finalists. He also objected to the promptness of that production.

¶22　　The university sent Abraham a response letter in November 2020. That letter stated that the documents that had not been produced "are deemed confidential personnel records and are withheld in accordance" with various policies. It also identified and provided copies of those policies. Presumably, its language referred to the materials provided by applicants who did not become finalists.

¶23　　As an initial matter, ABOR asks us to conclude that Section 12-821 imposes the limitations period applicable to public-records actions. That statute provides, "All actions against any public entity or public employee shall be brought within one year after the cause of action accrues and not afterward." *Id.* Although Abraham disagrees that Section 12-821 applies, he has not identified a different limitations period. Instead, he points to case law that interprets the special-action rules as "provid[ing] no limits on the time within which a special action may be filed." *State ex rel. McDougall v. Tvedt*, 163 Ariz. 281, 283 (App. 1989).

¶24　　But that case law does not mean that all actions brought under the special-action rules are exempt from statutes of limitations. It instead means that no time limits apply to special actions seeking an appellate court's review of a trial-court decision. *See id.* (involving special-action review of trial-court order striking allegation of prior conviction). It has no bearing on the application of Section 12-821, which by its plain language, applies to "[a]ll actions" against public entities and employees. *See Flood Control Dist. of Maricopa Cnty. v. Gaines*, 202 Ariz. 248, ¶ 9 (App. 2002) ("Clearly, the words '[a]ll actions' in § 12-821 do not lend themselves to an

interpretation that would exclude an inverse condemnation action . . . ." (alteration in *Flood Control Dist. of Maricopa Cnty.*)). This case is such an action. We must therefore determine whether Abraham's cause of action accrued within one year before his September 2021 complaint.

¶25 A limitations period generally begins running "after an injury occurs and is (or reasonably should have been) discovered." *Albano v. Shea Homes Ltd. P'ship*, 227 Ariz. 121, ¶ 23 (2011). That date is known as the accrual date. *Sato v. Van Denburgh*, 123 Ariz. 225, 227 (1979). In public-records cases, Section 39-121.02(A) defines the injury as occurring when the officer or public body "denie[s] access to or the right to copy" the requested records. Thus, the cause of action accrues when the plaintiff receives the denial.

¶26 Here, Abraham received the university's November 2018 and March 2019 denials years outside the limitations period. Only the third letter, in November 2020, was sent within one year before Abraham filed his complaint. Thus, whether the statute of limitations bars Abraham's claim depends on whether accrual occurred when he learned that the university had denied his requests in either November 2018 or March 2019, or whether the accrual clock restarted when he learned of the November 2020 denial.

¶27 We conclude that the claim accrued no later than when Abraham learned of the March 2019 denial. Although Abraham's counsel characterized the October 2020 demand letter as a "formal public records request, which is served pursuant to A.R.S. § 39-121, *et seq.*," it did not actually request documents relating to Count One. As noted, it instead acknowledged that the university had produced responsive documents, albeit in an assertedly untimely manner. Absent a new request, we cannot understand the university's November 2020 letter as a new denial that restarts the accrual clock. It was instead an explanation of the university's prior response, accompanied by the policies supporting that explanation. No new responsive documents were produced, which could arguably have restarted the accrual clock. Thus, the trial court properly granted summary judgment to ABOR on Count One.

## SCOPE OF TRIAL COURT REVIEW FOR PUBLIC-RECORDS DENIALS

¶28 Abraham next argues that the trial court erred in its ruling on the merits by reviewing the university's responses to the records requests for an abuse of discretion. He argues that the court should have instead

reviewed those responses de novo. We review de novo the legal question of whether the court applied the proper scope of review. *See Scottsdale Unified Sch. Dist. No. 48 v. KPNX Broad. Co.*, 191 Ariz. 297, ¶ 20 (1998) (applying de-novo review to court's legal conclusions). We also "must recognize a trial court's findings of fact unless they are clearly erroneous." *Ariz. Bd. of Regents v. Phoenix Newspapers, Inc.*, 167 Ariz. 254, 257 (1991). We note that these appellate standards of review are distinct from the trial court's scope of review, the latter of which is the central issue in this case.

## I.      Whether Abraham waived the issues

**¶29**          As a threshold matter, ABOR argues that Abraham waived the argument that the scope of the trial court's review should have been de novo, because he did not ask the court to apply that standard. In general, we do not consider arguments raised for the first time on appeal. *Noriega v. Town of Miami*, 243 Ariz. 320, ¶ 27 (App. 2017). However, we have discretion to do so. *City of Tucson v. Clear Channel Outdoor, Inc.*, 209 Ariz. 544, n.9 (2005) ("While we generally will not consider arguments not presented below, this is a rule of prudence, not of jurisdiction." (citation omitted)). We have exercised that discretion where "the facts are fully developed, undisputed, and the issue can be resolved as a matter of law." *State ex rel. Horne v. Campos*, 226 Ariz. 424, n.5 (App. 2011); *see also Logan B. v. Dep't of Child Safety*, 244 Ariz. 532, ¶¶ 9-11 (App. 2018) (not applying waiver where issue is purely legal).

**¶30**          Before trial, the parties addressed the scope of the trial court's review. In the joint pretrial statement, they identified as a contested issue of law "[w]hether an abuse of discretion is the appropriate standard of review by which the University's actions as to each of Dr. Abraham's requests for public records must be evaluated and judged under the public record law." But Abraham did not expressly ask that the court conduct de-novo review.

**¶31**          Nor did he do so at trial. Rather, in responding to questions about the scope of the trial court's review, Abraham described the issue as whether "on the framework that's established they followed the law." In his view, this analysis required the court to consider whether "for those things not produced, or at least not produced in whole, have they explained what they withheld and why."

**¶32**          From Abraham's statements in the trial court, it is difficult to discern his proposed scope of review. Still, we conclude that he did not waive the issue. Although he did not use the term "de novo," he argued

for more fulsome review than ABOR, which sought abuse-of-discretion review. The vagueness of his statements did not deprive ABOR of the opportunity to develop its own position. Nor did it deprive the court of the ability to analyze the issue. Moreover, the proper scope of review is a pure legal issue, which as noted, is an area where we often decline to apply waiver.

## II. Legal background concerning denial of public records due to confidentiality, privacy, and best interests of the state

¶33 Turning to the substantive issue, we begin with an overview of the relevant public-records laws. The university's obligation to maintain and preserve public records is governed by Section 39-121.01, which requires "officers and public bodies" to "maintain all records . . . reasonably necessary or appropriate to maintain an accurate knowledge of their official activities." § 39-121.01(B). It also authorizes "[a]ny person" to "request to examine or be furnished copies, printouts or photographs" of such records. § 39-121.01(D)(1); *see also* § 39-121 ("Public records and other matters in the custody of any officer shall be open to inspection by any person at all times during office hours."). The parties agree that the records at issue here satisfy the statutory definition of public records and are not statutorily exempt from disclosure. *See, e.g.*, A.R.S. §§ 15-1042(I) (exempting "student level data" from public-records statutes), 15-1045 (exempting personally identifiable information in "pupil educational records" from public-records statutes); 15-1640(A) (exempting certain university records from public-records statutes).

¶34 Even for public records not subject to a statutory exemption, the right of access is not absolute. *Carlson*, 141 Ariz. at 491 ("[T]he law also recognizes that an unlimited right of inspection might lead to substantial and irreparable private or public harm . . . ."). Instead, a "strong presumption favoring disclosure applies." *Jud. Watch, Inc. v. City of Phoenix*, 228 Ariz. 393, ¶ 10 (App. 2011). If an officer or public body seeks to withhold records, it bears the burden of overcoming that presumption. *Id.* It must demonstrate "the probability that specific, material harm will result from disclosure." *Smith v. Town of Marana*, 254 Ariz. 393, ¶ 12 (App. 2022) (quoting *Mitchell v. Superior Court*, 142 Ariz. 332, 335 (1984)).

¶35 In *Carlson v. Pima County*, our supreme court explained how an officer or public body can satisfy that burden. 141 Ariz. at 491. They "may refuse inspection" if "the countervailing interests of confidentiality, privacy or the best interests of the state should be appropriately invoked." *Id.* (citing *Mathews v. Pyle*, 75 Ariz. 76, 81 (1952) (directing trial court to

conduct in-camera review of documents in possession of governor's office to determine whether disclosure required)). As *Carlson* explains, however, that "discretionary refusal is subject to judicial scrutiny." *Id.* Thus, Section 39-121.02(A) allows a person who has been "denied access to or the right to copy [public] records" to "appeal the denial through a special action in the superior court."

## III. Scope of review applicable to officer or public body's denial

**¶36** Section 39-121.02 does not identify the scope of the trial court's review. But the statute and case law point to a two-pronged scope of review, as we address below.

### A. Legal background

**¶37** We begin with the statute, which merely provides for the special action to be conducted "pursuant to the rules of procedure for special actions against the officer or public body." § 29-121.02(A). The version of those rules applicable through December 2024, in turn, limits the scope of issues "that may be raised in a special action." Ariz. R. P. Spec. Act. 3 (effective to Dec. 31, 2024). Relevant here, these include, "[w]hether a determination was . . . an abuse of discretion." Ariz. R. P. Spec. Act. 3(c). The version of those rules that takes effect in January 2025 imposes the same standard. Ariz. R. P. Spec. Act. 4(c) (effective Jan. 1, 2025).

**¶38** Our case law, though, does not always use abuse-of-discretion language. For example, some cases state that courts must review de novo whether the "denial of access to public records is wrongful." *See, e.g.*, *Cox Ariz. Publ'ns, Inc. v. Collins*, 175 Ariz. 11, 14 (1993) (also providing that "trial court's finding that a custodian has acted in bad faith, arbitrarily or capriciously will be upheld unless clearly erroneous"). Other cases, most notably *Arizona Board of Regents v. Phoenix Newspapers, Inc.*, reference de-novo review but also contemplate deference to public entities. 167 Ariz. at 257. Still others, such as *Church of Scientology v. City of Phoenix Police Dep't*, 122 Ariz. 338, 340 (App. 1979), do not identify a scope of review. But despite these differences, we understand the cases as applying a consistent, two-pronged scope of the trial court's review.

### B. Prong one—review of sufficiency and specificity of harm

**¶39** The first prong requires trial courts to address whether the officer or public body has articulated a sufficient, specific harm arising from disclosure. *Carlson*, 141 Ariz. at 491. That harm must be grounded in

10

confidentiality, privacy, or the best interests of the state.  *See Smith*, 254 Ariz. 393, ¶ 19 ("The Town fails to identify any 'specific, material harm' that 'will result from disclosure.'" (quoting *Mitchell*, 142 Ariz. at 335)).  It must also have a factual basis.  *ACLU*, 240 Ariz. 142, ¶ 30.

¶40        The sufficiency and specificity of the harm identified by the officer or public body is a legal question.  *Scottsdale Unified Sch. Dist.*, 191 Ariz. 297, ¶¶ 9-12.  The trial court, therefore, owes no deference to their view and must independently determine whether they have provided a sufficiently specific harm.  This procedure is not at odds with the existing or new special-action rules' requirement for abuse-of-discretion review, because an error of law is an abuse of discretion.  *Shinn v. Ariz. Bd. of Exec. Clemency*, 254 Ariz. 255, ¶ 13 (2022); *see also* Ariz. R. P. Spec. Act. 4(c) (effective Jan. 1, 2025) ("abuse of discretion . . . can include a legal error").

¶41        Consistent with this review, our case law has frequently concluded that officers or public bodies have failed to sufficiently identify a specific harm.  For example, our supreme court found insufficient an officer's reliance on "global generalities" in seeking to withhold copies of police investigative reports.  *Collins*, 175 Ariz. at 14-15.  This court did the same in *Church of Scientology*, when it rejected law enforcement's argument that its investigative materials should remain confidential after the investigation has concluded.  122 Ariz. at 339-40.  By contrast, our supreme court found sufficient a school district's argument that it could withhold records about employee birth dates.  *Scottsdale Unified Sch. Dist.*, 191 Ariz. 297, ¶¶ 9-12; *see also A.H. Belo Corp. v. Mesa Police Dep't*, 202 Ariz. 184, ¶¶ 18-20 (App. 2002) (concluding that city had identified sufficient privacy interest in withholding audiotape of 9-1-1 call concerning baby's death).

### C. Prong two—review of individual withholding and redaction decisions

¶42        If the officer or public body has articulated a sufficient harm, trial courts turn to the second prong, which requires them to address whether individual records were properly withheld or redacted to prevent that harm.  *Carlson*, 141 Ariz. at 491.  On this issue, consistent with the special-action rules' abuse-of-discretion standard, the court's review becomes more deferential.  That deference is illustrated by *Phoenix Newspapers*, where our supreme court concluded that ABOR "had the discretion to balance the countervailing interests."  167 Ariz. at 257.

¶43        *Phoenix Newspapers* involved requests from newspapers for identifying information about 256 prospects who had been considered for

the presidency of Arizona State University. 167 Ariz. at 255-57. ABOR had declined to release information related to prospects who were not interviewed, and our supreme court agreed that this was within ABOR's discretion. *Id.* at 256-58. It reasoned that releasing the documents could "prove[] detrimental to the search process, resulting in lesser qualified, but thicker skinned, persons applying." *Id.* at 258. It thus held that ABOR's balancing of the relevant interests was appropriate. However, it also affirmed the trial court's order requiring ABOR to release documents concerning candidates who were interviewed. *Id.* at 257-58.

**¶44**        In some cases, this second prong may require an in-camera review. *See Mathews*, 75 Ariz. at 80-81. As we explained in *Bolm v. Custodian of Records of Tucson Police Dep't*, 193 Ariz. 35, ¶ 14 (App. 1998), "Depending on the nature and volume of the documents at issue, an in camera inspection may further the interests of judicial economy in many cases by obviating the need for lengthy evidentiary hearings."

**¶45**        For example, in *KPNX-TV v. Superior Court*, 183 Ariz. 589, 591-92 (App. 1995), the state had sought to withhold video of a crime scene, which was also the headquarters of a law-enforcement agency. This court reviewed the video and concluded that it revealed no confidential details about the building, so it ordered disclosure. *Id.* at 593-94. It did not expressly identify the scope of review—and at one point alluded to a de-novo standard—but its analysis of a separate videotape at issue also appeared to defer to the state's "legitimate security concerns." *Id.* at 593. We therefore understand *KPNX-TV* as having applied abuse-of-discretion review.

### D.  Summary of scope of review

**¶46**        In sum, consistent with the special-action rules, our case law imposes the following scope of trial-court review when an officer or public body seeks to withhold or redact public records based on confidentiality, privacy, or the best interests of the state. First, because the determination of whether the officer or public body has invoked a specific, legally sufficient harm is a legal question, trial courts apply de-novo review. Second, if the public officer or body satisfies that review, trial courts apply abuse-of-discretion review in evaluating the withholding and redaction decisions for specific documents. We acknowledge that this standard is at least partly inconsistent with this court's unpublished decision in *Energy & Environment Legal Institute v. Arizona Board of Regents*, No. 2 CA-CV 2015-0086, 2015 WL 7777611 (Ariz. App. 2015), upon which Abraham relies.

**MERITS OF TRIAL COURT RULING**

**¶47** Having identified the scope of review, we now address whether the trial court properly concluded that the university was not required to provide Abraham with additional documents. We focus on Counts Three, Four, Five, and Nine, as the remaining counts have either been addressed elsewhere in this decision or are not the subject of Abraham's appeal. These four counts concern two categories of documents: (1) survey data concerning job candidates; and (2) documents concerning the university's searches for the interim director and director of its writing program, as well as the head of its Women and Gender Studies program.

### I. Qualtrics Survey data

**¶48** We first address the surveys, which are implicated by each of the four counts. These "Qualtrics Survey[s]" are sent to faculty, staff, and graduate students seeking feedback on candidates for leadership positions. Count Three concerned surveys about applicants to be interim director of the first-year writing program. Count Four concerned surveys about applicants to be that program's permanent director. Count Five concerned surveys about applicants to be director of the Rhetoric, Composition & the Teaching of English program. And Count Nine concerned surveys about applicants to be head of the Women and Gender Studies Program. In responding to Abraham's requests, the university withheld some survey results and redacted others. After the October 2020 demand letter from Abraham's counsel, it re-disclosed results with far fewer redactions.

### A. Sufficiency of the university's explanations for withholding and redacting the survey data

**¶49** We turn first to the legal sufficiency of the university's explanations for withholding the survey results. At trial, a university public-records coordinator testified that withholding and redacting Qualtrics Survey data was consistent with university policy to protect the anonymity of commenters. Anonymity was intended to ensure that commenters would provide "forward and frank comment[s]" and "honest feedback." However, Abraham testified that the comments and survey results were never intended to be confidential.

**¶50** No case law expressly addresses whether public entities may withhold or redact records to ensure the anonymity of survey respondents. We agree with ABOR though, that the university's explanation was

sufficient. Its explanation was not in the nature of "global generalities" rejected by *Collins*. Nor was it unreasonably broad, like in *Church of Scientology*, where law enforcement asserted an interest in forever preserving the confidentiality of investigative documents.

**¶51** Rather, the university's explanation was specific, narrow, and focused on the concrete understanding that anonymous feedback about job applicants is generally more honest. If survey respondents knew that their responses could be traced back to them, they would likely be less forthright and thorough. This possibility is especially likely when respondents are analyzing candidates to be their supervisor or to otherwise exercise authority within the respondents' departments.

**¶52** We reject Abraham's assertion at oral argument that these concerns are lessened when the position is less prominent than the ASU presidency, which was at issue in the *Phoenix Newspapers* case. If anything, the close working relationship between the respondents and the subject of the surveys heightens the likelihood that anonymity would result in thorough, honest feedback. Under the circumstances here, maximizing this likelihood fits within the "confidentiality" exception set forth in *Carlson*. 141 Ariz. at 490-91.

### B. Whether the university abused its discretion in withholding and redacting documents

**¶53** We next address whether the university abused its discretion in making the withholding and redaction decisions. We begin by noting that when Abraham initially made the requests, the university withheld and redacted some documents that it later produced. We agree with Abraham and the trial court that some of these initial decisions were improper. But as we have explained, Abraham cannot recover money damages for any delay in properly producing documents. Instead, the sole remedy available to him was disclosure of documents. We therefore address only the documents that remained withheld or redacted when the litigation began.

**¶54** As the public-records coordinator testified, the university redacted information that could identify the commenter on a survey. Both at trial and on appeal, Abraham argued that these redactions included information that was not personally identifying. He also questions whether the redactions resulted in a sufficiently transparent hiring process.

¶55 However, the documents produced to Abraham contained only limited redactions, primarily of the commenters' names and identifying information. In some cases, entire comments were redacted, if the public-records coordinator had concluded that the comment "would identify the individual making the comment." The university memorialized those redactions in logs, though it did not generally provide detailed explanations.

¶56 Like the trial court, we conclude that the university acted within its discretion in withholding and redacting the Qualtrics Survey responses. Those redactions were consistent with the explanations that the witnesses provided. Given our abuse-of-discretion review, we have no basis for second guessing the individual redaction decisions. Doing so would be especially inappropriate because Abraham did not request an in-camera review, which could have allowed the court to more closely address the sufficiency of individual redactions.

¶57 As to Count Nine, the record does not indicate that the university disclosed the Qualtrics Survey data concerning the search for the Gender and Women's Studies head. However, Abraham does not argue on appeal that the university abused its discretion in this regard. We therefore do not address the issue.

## II. Documents concerning search for writing-program directors and Women and Gender Studies program head

¶58 We turn next to the remaining documents in Counts Four and Nine. Count Four concerned Abraham's request for "all responsive records relevant to the selection process for the Interim Director of the Writing Program concluded in December 2019, as well as all responsive records for the recently completed process for the permanent Director of the Writing Program position." Count Nine concerned his request for "all responsive documents describing the search process for the recently completed hire of the Head of the Women and Gender Studies Program." Other than perhaps the Qualtrics Surveys discussed above, it is unclear from Abraham's briefing the extent to which he believes ABOR's disclosure was incomplete. We surmise that, at least to some extent, he believes the university was required to disclose materials submitted by applicants for the positions. We therefore address the university's obligation to disclose application materials.

¶59 In explaining the university's rationale for keeping application materials confidential, its chief human resources officer testified

that it relies on an internal guide to conducting searches. That guide, which she testified contained "best practices," emphasized the importance of preserving candidate confidentiality. She explained that doing so helps attract candidates who may require anonymity before applying or remaining in the candidate pool. She also testified that breaching confidentiality could "create conflict and discord among the search committee."

¶60 Reviewing these explanations de novo, we conclude that they are sufficient. As our supreme court concluded in *Phoenix Newspapers*, preserving confidentiality in candidate searches can, at least to some extent, justify withholding public records. 167 Ariz. at 258. In the context of the ASU presidential search, it explained, "The public's interest in ensuring the state's ability to secure the most qualified candidates for the university president's position is more compelling than its interest in, or need to know, the names of all of the prospects." *Id.* Thus, the court required ABOR to release only the names of the seventeen candidates interviewed, not all 256 prospects it considered. *Id.*

¶61 ABOR's arguments here parallel those in *Phoenix Newspapers*. The testimony, including about the best-practices guide, demonstrated with specificity the harm that could ensue from releasing job-application materials. And while Abraham correctly asserts that best practices are not the law, the university's compliance with best practices illustrates the importance of the confidentiality interests at issue. We conclude that, as a matter of law, these explanations were legally sufficient to allow the university to withhold these materials.

¶62 Abraham has not identified any documents that he believes the university wrongfully withheld or redacted on these bases. We therefore need not address whether the university abused its discretion in doing so.

## ATTORNEY FEES

¶63 Finally, Abraham challenges the trial court's decision to deny him attorney fees. Under A.R.S. § 39-121.02(B), the court "may award attorney fees and other legal costs that are reasonably incurred in any action under this article if the person seeking public records has substantially prevailed." We review the court's interpretation of the statute de novo. *ACLU*, 251 Ariz. 458, ¶ 11. We also review for an abuse of discretion a trial court's determination of whether a party has substantially prevailed. *Hodai v. City of Tucson*, 239 Ariz. 34, ¶ 41 (App. 2016).

¶64   In denying fees, the trial court reasoned that "the measure of whether a Plaintiff has 'substantially prevailed' in an action brought under the Public Records Law depends on Plaintiff's success once the action has been filed." It thus concluded that Abraham could not be deemed the substantially prevailing party, because it did not order the university to produce any additional documents.

¶65   Abraham argues, though, that his counsel's demand letter was the "catalyst" that prompted the university to partially comply with his requests. He therefore argues that he substantially prevailed because the university produced many documents he had requested before he filed the case.

¶66   Where statutes are unambiguous, we interpret them based on their plain language. *In re Drummond*, ___ Ariz. ___, ¶ 5, 543 P.3d 1022, 1025 (2024). We "give meaning, if possible, to every word and provision so that no word or provision is rendered superfluous." *Nicaise v. Sundaram*, 245 Ariz. 566, ¶ 11 (2019). In this case, we must determine whether Section 39-121.02(B) authorizes a fee award only where a party has "substantially prevailed" in the litigation itself, or if the trial court may consider the party's pre-litigation success even where the litigation itself does not result in the disclosure of records.

¶67   As an initial matter, our supreme court has broadly defined the scope of "action[s]" that can give rise to fee awards under Section 39-121.02(B). *ACLU*, 251 Ariz. 458, ¶¶ 20-23 & 21. These include not just special actions, but cases seeking declaratory or injunctive relief, if they are intended to elicit the disclosure of public records. *Id.* ¶¶ 20-23. The court also explained that a party can recover fees even if it does not obtain documents, if it achieved some other measure of litigation success. *Id.* ¶ 17 ("[W]e conclude that the trial court should examine all of the claims or requests made by the requesting party, and if that party was more successful than not in obtaining the requested records, defeating the government's denial of access to public records, or securing other relief concerning issues that were contested before the filing of an action, then the requesting party 'substantially prevailed' . . . ." (quoting Section 39-121.02(B))).

¶68   Our supreme court did not, however, define "action" so broadly to include pre-litigation efforts. *Id.* Nor has Abraham pointed us to any other public-records cases that have done so. Arizona law also defines an "[a]ction" as a "matter or proceeding in a court." A.R.S.

§ 1-215(1). Thus, Abraham's pre-litigation efforts cannot, on their own, be understood as an "action."

**¶69** Section 39-121.02(B), however, does not expressly require the party seeking fees to have substantially prevailed in the action itself. The phrase "in any action" is grammatically separate from the phrase "substantially prevailed." Instead, it immediately follows the phrase "attorney fees and other legal costs that are reasonably incurred." *Id.* The phrase "substantially prevailed" occurs later in the sentence. *Id.*

**¶70** This grammatical construction matters because under the "last antecedent rule, a qualifying phrase such as 'in any action' is applied to the word or phrase immediately preceding as long as there is no contrary intent indicated." *See Law Off. of Anne Brady, PLLC v. Dep't of Econ. Sec., ESA Tax Unit*, 255 Ariz. 302, ¶ 15 (App. 2023). Abraham's "catalyst" argument builds on the fact that "in any action" does not qualify the phrase "substantially prevailed." He therefore suggests that a party can substantially prevail through successful pre-litigation efforts, if they result in an "action."

**¶71** But as suggested by the last-antecedent rule's "no contrary intent indicated" language, we do not construe statutory language in isolation. *Id.*; *Drummond*, ___ Ariz. ___, ¶ 9, 543 P.3d at 1022. Instead, we consider words "in their broader statutory context, unless the legislature directs us to do otherwise." *S. Ariz. Home Builders Ass'n v. Town of Marana*, 254 Ariz. 281, ¶ 31 (2023). And here, the broader context of Section 39-121.02 concerns only litigation—the "action"—not efforts that occur before the action begins.

**¶72** First, despite the grammatical construction of "substantially prevailed" in subsection (B), that subsection's substance refers solely to the "action." The same is true of the other subsections. Subsection (A) authorizes a special action, and subsection (C)—which Abraham has not invoked—provides a "cause of action . . . for any damages resulting from the denial" of public records. None of the subsections concern or refer to pre-litigation negotiations. Thus, the statutory context does not support interpreting "substantially prevailed" by looking to a party's success in pre-litigation negotiations. *See also Paradigm DKD Grp., LLC v. Pima Cnty. Assessor*, 246 Ariz. 429, ¶ 27 (App. 2019) ("[W]e hold that a party may 'substantially prevail' under A.R.S. § 39-121.02 for the purposes of attorney fees and costs only to the extent an action is necessary to accomplish the purpose of an original records request.").

¶73 Abraham also analogizes Section 39-121.02(B) to A.R.S. § 12-341.01, which allows a trial court to award attorney fees in a "contested action arising out of a contract." As he points out, courts have discretion to include certain pre-litigation fees in an award under that statute. *First Nat'l Bank of Ariz. v. Cont'l Bank*, 138 Ariz. 194, 200 (App. 1983) (allowing recovery of fees for "pre-complaint investigation and evaluation of the potential claim"). But Abraham has pointed to no cases allowing a fee award to a party that obtained no relief in the litigation itself. Rather, that statute contemplates the party achieving some measure of litigation success. *See* § 12-341.01 ("[T]he court may award the successful party reasonable attorney fees.").

¶74 Finally, Abraham argues in reply that requiring success in the litigation allows public entities to avoid a fee award simply by curing violations before litigation is filed. Whatever the practical wisdom of this argument, we are constrained by the statutory language. We therefore conclude that the trial court properly denied Abraham's request for fees.

## DISPOSITION

¶75 We affirm the trial court's dismissal of Count Two and its grant of summary judgment on Counts One and Eight. We also affirm its decision denying relief on Counts Three, Four, Five, and Nine, as well as its denial of attorney fees. We deem ABOR the prevailing party on appeal, so it is entitled to an award of costs upon compliance with Rule 21 of the Arizona Rules of Civil Appellate Procedure.